Curia, per Evans, J.
The first question which I propose to consider, is the second made in the brief: Is the indenture of apprenticeship void by either the statute or the common la\7 ? I do not propose to undertake to discuss, much less to decide, whether, by the common law, a parent can bind his infant child as an apprentice. It would seem, according to Chan *106 cellor Kent, no such power existed, and his opinion has the authority of a case in 3 Bara. & A. 58, to sustain it. The samc opinion is expressed in Springfield v. Huskell; and in Pierce v. Musselberg, but in Rex v. Cromford, Lord Kenyon intimates a different opinion. In the matter of McDowles, Court say a Parent may bind his infant child an appren-nce> and the same opinion is to be found in our own case of Eubanks v. Peake; but, as I have said before, I do not proPose t0 decide it. It is not involved in the case. I have re-ferre(f t0 it on*y because it was argued by the counsel on both sides, and because it afforded an opportunity of presenting the authorities on both sides, as far as my researches have gone; nor is it necessary to inquire how far, in loco parentis, the mother of an illegitimate child stands in relation to him. Of necessity she must exercise power and control over him whilst of tender age, and there are cases where the mother’s rights over such a child have been so far recognized, as to restore it to her by habeas corpus. Deplorable indeed would be its condition, unless its government and control were vested in some one. But I have no where seen anything which authorizes the conclusion that a mother has any power to bind her illegitimate child as an apprentice. It may, therefore, I think, be safely affirmed, that as the deed was not executed in conformity with the Act of 1740,3 Slat. 544, (by which the infant, tobe bound, must be a party to the deed of indenture,) it was void so far as the infant was concerned. But it does not follow from this that it may not be binding as between the parties to it, who are the parties to this suit. There is nothing unlawful, but much that is praiseworthy in the stipulations. Parties may lawfully contract about that which is not prohibited by the law, as immoral or against public policy. If A should enter into a contract with B, that C should serve him as an overseer, or build him a house, or go to Rome on his, B’s business, and, in consideration of this, B should undertake to do certain acts, or to pay a sum of money, I do not see why each may not maintain an action against the other for a breach of the covenant. In this case I construe this covenant to be nothing more than this, that the plaintiff undertook that her illegitimate son, David Austin, should serve M’Creight as an apprentice, until be was 21 years of age ; in consideration of which, M’Creight undertook to give him instruction in his trade and schooling, and, at the expiration of his term, to give him a horse and a suit of clothes. The plaintiff has performed her part, her son has. faithfully performed what his mother undertook, and I can see no reason why the defendant should not be compelled to perform what was stipulated by his intestate.
The deed of indenture in this case was not executed according to the Act of 1740, which requires that the apprentice *107 should lóe a party to it, but we have a great many cases in which it has been held that the parties were bound at mon law, although theintruments declared on have not been taken in pursuance of the statute, on the principle that they were voluntary and therefore binding. In the case, Commissinners of Poor v. Gilbert, it was held that a voluntary bond, given to the commissioners of the poor for the maintainance of a bastard child, was good at common law, although different from what is required by the statute. In cases of replevin the law requires a bond to be given to the sheriff or officer replevying the goods; but in Kilgore v. Rabb it was held that a bond given to the landlord was good at common law, and binding ; and in Bofill v. Russ, the bailiff took the bond in his own hand, and it was held to be good.' In Day v. Everett, a father by indenture put his son tó hire and dwell with defendant for 6 years, that during the time he would not remové him, and that the son should faithfully serve; the defendant covenanted, among other things, to pay a certaim sum of money. The son perforrhed, and it was held that, although this deed was not in pursuance of the statute, yet it was good at.common law, as the father might lawfully assign the services of his child during his minority, and during the life of the father. Both on principle and authority, I think, we may safely conclude, that as the covenants of the plaintiff have been performed, the defendant is bound to perform also.
But admitting this, it is contended this action will not lie, as the plaintiff has no interest, and has sustained no damage by the breach of the covenant. Wherever there is a legal liability, the right to enforce it exists somewhere. In whom does it exist in this case ? ■ It is clear the son can maintain no action on the covenant; he is no party to it, and the rule is very clear, that none but á party to a deed can maintain an action for a breach of its covenants. We have been referred to, a case, said.to have been decided in Pennsylvania, a note of which is found in 2d U. S. annual Digest, quoted from 5 Barr. 269, to the following effect: where the mother of an illegitimate son bound him as an apprentice, by indenture executed by her and the master, the son, if he has performed the stipulations of his mother, may maintain an action on the case against the master for the non-performance of his agreement. I have not seen this case, and as these abstracts are generally very imperfect, I would attach no great importance to it.
There is no doubt, if McCreight had given the apprentice the horse and suit of clothes, that would have discharged his covenant, and it may be, that for a breach of this duty, case would lie against him, and a recovery and satisfaction would discharge his liability on the covenant; but, as no such fact *108 exists in this case, we are not encumbered by that difficulty. rp^e qUestion js¡ can this plaintiff now maintain this action.
The general rule, as found in Chitty, and all the elementary writers, is, that the action on a contract, whether express or implied, by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested. This principle is illustrated by reference. to the case of Anderson v. Martindale. The action in that case was on a covenant to A, his executors and assigns, and to B his executors and assigns, to pay an annuity to A ; it was held that this was a joint covenant to A and B, which on the death of A survived to B, and consequently the action should be in the name of B the survivor, although the money when collected would go the executors of A. This was on the principle above stated, that, by the contract, the legal interest survived to B, and as a consequence, the contract must be enforced by action in the name of B, although the money when recovered belonged to the executor of A. In the case in hand, there is no doubt the money, when recovered, will be for the use of David Austin or his representatives. He may be regarded as a cestui que use. But the legal interest in the covenant is in the plaintiff; and although she has personally sustained no damage by the breach, yet she may enforce it for the benefit of the cestui que use. It is said in Broom’s parties to actions, p 1, on the authority of the cases of Shelve v. Wrost, and Goodlittle v. Jones, that where there are two kinds of estates in different persons, the one equitable and the other legal, the person having the equitable estate must call in aid the legal estate, before he can recover in a court of law. Without multiplying authorities on this point, am of opinion that the plaintiff can maintain this action; and as the defendant is liable for a breach of his covenant, and the action is properly brought in the name of the plaintiff, the covenantee, the motion must be dismissed.
Frost & Withers, JJ., concurred.

Motion refused.